IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:18-cv-2201 |
| ) | |
| DERIVE SYSTEMS, INC., ) | **COMPLAINT** |
| f/d/b/a SCT HOLDINGS, INC. and ) | |
| SCT DELAWARE HOLDINGS, INC.; ) | |
| DERIVE POWER, LLC, ) | |
| f/d/b/a SCT PERFORMANCE, LLC and ) | |
| BULLY DOG ACQUISTION, LLC; and ) | |
| DERIVE EFFICIENCY, LLC, ) | |
| ) | |
| Defendants. ) | |

Plaintiff, the United States of America ("United States"), by authority of the Attorney General of the United States and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), by and through their undersigned attorneys, with respect to claims under federal law, allege as follows:

## NATURE OF ACTION

1. This is a civil action brought under sections 203, 204, and 205 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7522, 7523, and 7524, for injunctive relief and the assessment of civil penalties against Derive Systems, Inc., f/d/b/a SCT Holdings Inc. and SCT Delaware Holdings, Inc.; Derive Efficiency, LLC; and Derive Power, LLC f/d/b/a SCT Performance, LLC and Bully Dog Acquisition, LLC for violations of the CAA and the regulations promulgated thereunder and appearing at 40 C.F.R. Parts 85 and 86.

1

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this action. 42 U.S.C. §§ 7523 & 7524; 28 U.S.C. §§ 1331, 1345, & 1355.

3. Venue and personal jurisdiction are proper in this district because the EPA Administrator's principal place of business is located in this district.

## DEFENDANTS

4. Between September 20, 2013 and August 12, 2015, SCT Delaware Holdings, Inc. purchased the stock of SCT Holdings, Inc. Following the merger of these corporations, the surviving entity was renamed Derive Systems, Inc. ("Derive Systems").

5. Between September 20, 2013, and August 12, 2015, Derive Systems owned and operated SCT Fleet Solutions, LLC as a subsidiary. Between September 20, 2013, and October 14, 2015, SCT Fleet Solutions, LLC was dissolved, and its assets were ultimately transferred to Derive Efficiency, LLC ("Derive Efficiency").

6. Between September 20, 2013, and August 12, 2015, Derive Systems owned and operated SCT Performance, LLC as a subsidiary. Between February 28, 2014 and August 12, 2015, Derive Systems owned and operated Bully Dog Acquisition, LLC as a subsidiary. On August 12, 2015, Derive Power, LLC ("Derive Power") was created through the merger of SCT Performance, LLC and Bully Dog Acquisition, LLC.

7. Derive Systems is incorporated under the laws of the State of Delaware and headquartered in Sanford, Florida.

8. Derive Power is a limited liability company organized under the laws of the State of Delaware and is headquartered in Sanford, Florida.

9. Derive Efficiency is a limited liability company organized under the laws of the State of Delaware and is headquartered in Sanford, Florida.

10. Derive Systems, Inc., SCT Holdings, Inc., SCT Delaware Holdings, Inc., Derive Power, LLC, SCT Performance LLC, Bully Dog Acquisition, and Derive Efficiency, LLC are collectively referred to as "Defendants."

11. Defendants are "persons" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

12. Defendants manufacture and/or sell products under the SCT brand name and Bully Dog brand name.

## STATUTORY AND REGULATORY BACKGROUND

13. This action arises under Title II of the CAA, as amended, 42 U.S.C. §§ 7521–7590, and the regulations promulgated thereunder relating to the control of emissions of air pollution from mobile sources.

14. Particulate matter ("PM") is a form of air pollution composed of microscopic solids and liquids suspended in air. PM is emitted directly from motor vehicles and is also formed in the atmosphere from the emission of other pollutants, including from motor vehicles.

15. Ozone is a highly reactive gas that is formed in the atmosphere from emissions of other pollutants, including from motor vehicles.

16. Nitrogen oxides ("$NO_x$") and non-methane hydrocarbons ("NMHCs") are reactive gasses that contribute to the formation of PM and ozone.

17. Exposure to PM and ozone is linked to a number of respiratory- and cardiovascular-related health effects as well as premature death. Children, older adults, people

who are active outdoors (including outdoor workers), and people with heart or lung disease are particularly at risk for health effects related to PM or ozone exposure.

18. Additionally, nitrogen dioxide ("$NO_2$") can aggravate respiratory diseases, particularly asthma, and may also contribute to asthma development in children. $NO_2$ is emitted directly from motor vehicles and is also formed in the atmosphere from the emission of $NO_x$, including from motor vehicles.

19. Carbon monoxide ("CO") is a highly toxic gas that can cause headaches, dizziness, vomiting, nausea, loss of consciousness, and death. Long-term exposure to CO has been associated with an increased risk of heart disease.

20. Title II of the CAA and regulations promulgated thereunder establish stringent limits for the emissions of certain air pollutants from mobile sources, including, but not limited to $NO_x$, NMHC, PM, and CO.

21. Manufacturers of new motor vehicles or motor vehicle engines must obtain a certificate of conformity ("COC") from EPA to sell, offer to sell, or introduce or deliver for introduction into commerce any new motor vehicle or motor vehicle engines in the United States. 42 U.S.C. § 7522(a)(1).

22. The COC application must describe, among other matters, the emissions-related elements of design of the motor vehicle or motor vehicle engine. This includes all auxiliary emission control devices ("AECDs"), which are defined as "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purposes of activating, modulating, delaying, or deactivating the operation of any part of the emission control system" of the motor vehicle. 40 C.F.R. §§ 86.1844-01(d)(11), 86.1803-01.

23. An element of design is "any control system (i.e., computer software, electronic control system, emission control system, computer logic), and/or control system calibrations, and/or the results of systems interactions, and/or hardware items on a motor vehicle or motor vehicle engine." 40 C.F.R. § 86.1803-01.

24. To obtain a COC for a given motor vehicle test group or engine family, the original equipment manufacturer ("OEM") must demonstrate that the motor vehicle or motor vehicle engine class does not exceed established emissions standards for $NO_x$, PM, CO, NMHC, and other pollutants. 40 C.F.R. §§ 86.1811-04, 86.1844-01, 86.004-21.

25. Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B), prohibits any person from manufacturing, selling, offering to sell, or installing any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with Title II of the CAA, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

26. It is also a violation for any person to cause any of the acts set forth in section 203(a). 42 U.S.C. § 7522(a).

## GENERAL ALLEGATIONS

27. EPA-certified motor vehicles and motor vehicle engines include a variety of hardware and software devices or elements of design that control emissions of pollutants.

28. New motor vehicles are equipped with engine control units, which are computers that monitor vehicle operations, including the operation of emission control devices and elements of design.

29. A standard requirement in modern motor vehicles and motor vehicle engines is an onboard diagnostics system ("OBD"), which must detect and report malfunctions of all monitored emission-related powertrain systems or components. 40 C.F.R. § 86.1806-05(b).

30. Exhaust gas recirculation ("EGR") is an element of design in diesel-fueled or gas-fueled motor vehicles that reduces $NO_x$ emissions, which are formed at the high temperatures caused during fuel combustion. By recirculating exhaust gas through the engine, EGR reduces engine temperature and $NO_x$ emissions.

31. Oxygen sensors are elements of design in gas-fueled motor vehicles that detect the ratio of air to fuel during fuel combustion. An imbalanced air-to-fuel ratio can result in increases in $NO_x$ or NMHCs.

32. The OBD is an element of design in diesel-fueled or gas-fueled motor vehicles that must detect and report malfunctions of EGR and oxygen sensors in motor vehicles so equipped by illuminating the "check engine light." 40 C.F.R. § 86.1806-05.

**FIRST CLAIM FOR RELIEF**
*Violation of Section 203(a)(3)(B): SCT Products*

33. The United States re-alleges paragraphs 1 through 32 above as if fully set forth herein.

34. Between September 20, 2013, and the present, Defendants manufactured, sold or offered to sell at least 300,000 of the following products:

    a. SCT Advantage III Ford Pro Racer Software Packages (Product No. 4332);

    b. SCT Advantage III Dodge/Chrysler Pro Racer Software Packages (Product No. 4332DCX);

    c. SCT Advantage III General Motors Pro Racer Software Packages (Product No. 4332GM);

    d. Ford All Gas Software Packages (Product No. 4100);

    e. Ford All-Gas & Diesel Packages (Product No. 4100D);

    f. Complete GM & Ford Software Packages (Product No. 4100GF);

    g. SCT SF3 Ford Power Flash Programmers (Product No. 3015);

    h. SF3 Power Flash Programmers (Product No. 3015R);

    i. SCT SF3 GM Power Flash Programmers (Product No. 3416);

    j. SCT Ford Livewire TS Performance Programmers and Monitors (Product No. 5015);

    k. SCT Ford Livewire TS+ Performance Programmers and Monitors (Product No. 5015P);

    l. SCT GM Livewire TS Performance Programmers and Monitors (Product No. 5416);

    m. SCT X4 Ford Power Flash Programmer (Product No. 7015); and

    n. SCT X4 GM Power Flash Programmer (Product No. 7416).

35. The products identified in Paragraph 34 are intended for use with, or as part of, motor vehicles or motor vehicle engines, including but not limited to the Cadillac Escalade, Chevy Avalanche, Chevy Silverado, Chevy SSR, Chevy Suburban, Chevy Tahoe, Chevy Trailblazer, Ford Contour, Ford Crown Victoria, Ford Edge, Ford Escape, Ford Escort, Ford Excursion, Ford Expedition, Ford Explorer, Ford Explorer Sport Trac, Ford F-150, Ford F-150 Lightning/Harley, Ford F-Series, Ford F-Series Super Duty, Ford Five Hundred, Ford Focus, Ford GT, Ford GT Supercar, Ford Lighting, Ford Mustang, Ford Ranger, Ford Taurus, Ford Thunderbird, GMC Sierra, GMC Yukon, Hummer H2, Lincoln Aviator, Lincoln LS, Lincoln Zephyr, Lincoln Mark VIII, Lincoln Navigator, Lincoln Town Car, Mercury Cougar, Mercury

Mariner, Mercury Marauder, Mercury Milan, Mercury Montego, Mercury Mystique, Mercury Sable, and Mercury Grand Marquis.

36. The products identified in Paragraph 34 contain at least one component that permits users to bypass, defeat, or render inoperative EGR, rear oxygen sensors, and/or OBD functions associated with EGR and rear oxygen sensors in certain models of motor vehicles or motor vehicle engines (hereinafter referred to as "Prohibited Components").

37. A principal effect of the Prohibited Components is to disable, defeat, or render inoperative devices or elements of design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

38. The products identified in Paragraph 34 have one or more Prohibited Components that have a principal effect of disabling, defeating, or rendering inoperative devices or elements of design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

39. Defendants knew or should have known that the products identified in Paragraph 34 were being offered for sale or installed for such use or put to such use.

40. Each product identified in Paragraph 34 containing the Prohibited Components that was manufactured, sold, offered for sale, or installed by Defendants for use with, or as part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).

41. Pursuant to sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523(a) and 7524(a), Defendants are liable for injunctive relief and civil penalties of up to $3,750 for each violation of section 203(a)(3)(B) occurring on or after January 13, 2009, through November 2, 2015, and injunctive relief and civil penalties of up to $4,619 for each violation of section

203(a)(3)(B) occurring after November 2, 2015, and assessed on or after January 15, 2018. 40 C.F.R. § 19.4; Civil Monetary Penalty Inflation Adjustment Rule, 83 Fed. Reg. 1190, 1193 (January 10, 2018).

## **SECOND CLAIM FOR RELIEF**

*Violation of Section 203(a)(3)(B): Bully Dog Product*

42. The United States re-alleges Paragraphs 1 through 41 above as if fully set forth herein.

43. Between February 28, 2014, and the present, Defendants manufactured, sold or offered to sell at least 63,000 Bully Dog GT Platinum Tuners (Product No. 40420).

44. The Bully Dog GT Platinum Tuner is intended for use with, or as part of, motor vehicles or motor vehicle engines, including but not limited to the Cadillac Escalade, Chevrolet Avalanche, Chevrolet Express, Chevrolet Silverado, Chevrolet Suburban, Chevrolet Tahoe, Dodge Ram, Ford Excursion, Ford Expedition, Ford Explorer, Ford F-150, Ford F-250, Ford F-350, Ford F-450, Ford F-550, Ford Motorhome, Ford Mustang, GMC Kodiak, GMC Savannah, GMC Sierra, GMC Topkick, GMC Yukon, Lincoln Mark/LT, Nissan Titan, Nissan Armada, Nissan Pathfinder, Nissan Frontier, and Infiniti QX56.

45. When installed on a 2012 Ford F-250 truck with a 6.7 Powerstroke diesel engine, the Bully Dog GT Platinum Tuner caused the motor vehicle to produce $NO_x$ emissions that exceed the established standards that must be met by the OEM to obtain a COC to introduce the motor vehicle or motor vehicle engine into United States commerce.

46. The Bully Dog GT Platinum Tuner contains at least one component that bypasses, defeats, or renders inoperative devices or elements of design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

47.     The Bully Dog GT Platinum Tuner has one or more components where a principal effect of the part or component is to bypass, defeat, or render inoperative devices or elements of design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

48.     Defendants knew or should have known that the Bully Dog GT Platinum Tuner was offered for sale or installed for such use or put to such use.

49.     Each Bully Dog GT Platinum Tuner manufactured, sold, offered for sale, or installed by Defendants for use with, or as part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).

50.     Pursuant to sections 204(a) and 205(a) of the CAA, 42 U.S.C. §§ 7523(a) and 7524(a), Defendants are liable for injunctive relief and civil penalties of up to $3,750 for each violation of section 203(a)(3)(B) occurring on or after January 13, 2009, through November 2, 2015, and injunctive relief and civil penalties of up to $4,619 for each violation of section 203(a)(3)(B) occurring after November 2, 2015, and assessed on or after January 15, 2018.  40 C.F.R. § 19.4; Civil Monetary Penalty Inflation Adjustment Rule, 83 Fed. Reg. 1190, 1193 (January 10, 2018).

### RELIEF REQUESTED

Wherefore, Plaintiff, the United States, respectfully requests that the Court grant the following relief:

a) Permanently enjoin Defendants from manufacturing, selling, offering to sell, or installing motor vehicle parts or components intended for use with a motor vehicle or motor vehicle engine where a principal effect of such part or component is to bypass, defeat, or render

inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with Title II of the CAA;

b) Assess a civil penalty of up to $3,750 for each violation of Section 203(a)(3)(B) of the CAA occurring after January 12, 2009 through November 2, 2015, and up to $4,619 for each violation of Section 203(a)(3)(B) of the CAA occurring after November 2, 2015;

c) Award the United States its costs and disbursements in this action; and

d) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JEFFREY H. WOOD

Acting Assistant Attorney General
Environment and Natural Resources Division

/s/ Patricia McKenna
PATRICIA MCKENNA
Counselor
DC Bar # 453903

/s/ Natalie G. Harrison
NATALIE G. HARRISON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station P.O. Box 7611
Washington D.C. 20044-7611
(202) 616-6517 (McKenna)
(202) 305-0461 (Harrison)
Patricia.Mckenna@usdoj.gov
Natalie.G.Harrison@usdoj.gov

Of counsel:

Kathryn Pirrotta Caballero, Esq.
U.S. Environmental Protection Agency

Margaret Alkon, Esq.
U.S. Environmental Protection Agency